Scott Edelsberg, Esq. (CA Bar No. 330990)
scott@edelsberglaw.com
EDELSBERG LAW, P.A.
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320

*Counsel for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES JOHANN, an individual, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>MY.GAMES B.V., a foreign corporation,<br><br>Defendant. | Case No.: 25-cv-2447-BJC-JLB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff James Johann ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against MY.GAMES B.V. ("Defendant"). Plaintiff makes the following allegations based upon, *inter alia*, the investigation made by his counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff which are based upon his personal knowledge:

## I. INTRODUCTION

1. This action is brought against Defendant, a mobile game publisher based in the Netherlands, regarding its unfair business practices in connection with the mobile game titled *War Robots*.

2. Defendant has collected hundreds of millions of dollars from United States consumers (including in California) through in-game purchases in *War Robots*. These purchases are marketed as a means for players to enhance their gameplay experience by acquiring and upgrading virtual characters, weapons, and other in-game items.

3. However, as described below, Defendant's substantial revenues have been obtained through a deceptive "bait-and-switch" scheme. After inducing consumers to spend significant sums of money to upgrade and improve their in-game assets (*i.e.*, characters and weapons), Defendant systematically and deliberately diminishes the effectiveness of those assets in bad faith. Simultaneously, Defendant introduces new, more powerful characters and weapons, thereby rendering prior purchases functionally obsolete and compelling consumers to make additional purchases to remain competitive in—and continue playing—the game.

4. This deliberate cycle of obsolescence constitutes an unfair and deceptive business practice, akin to unlawful planned obsolescence schemes, and breach of good faith and fair dealing, which has caused substantial harm to consumers who invested significant amounts of money with the reasonable expectation of enduring value and utility from their purchases.

## II. PARTIES

5. At all times material hereto, Plaintiff James Johann has been a citizen of the State of California and resident of the County of San Diego.

6. On information and belief, Defendant MY.GAMES B.V., a company established and

operating under the legislation of the Netherlands (reg. number: 56701527), with its registered office at De Entree 256, 1101 EE, Amsterdam, Netherlands.

7. On information and belief, Defendant develops, publishes, distributes and operates the mobile game *War Robots*.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because the total matter in controversy exceeds $5 Million and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of California and Defendant is a citizen of a foreign nation.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

10. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), and (c)(3) because Defendant is subject to the Court's personal jurisdiction in this judicial district.

11. The Court has personal jurisdiction over Defendant and venue is proper in this District because Plaintiff resides in this District, Defendant directs, markets, and provides its business activities to this District, and because Defendant's unfair business practices were directed by Defendant to consumers in this District, including to Plaintiff, and throughout the United States.

12. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business and directs its activities into this District, including activities that form the basis for the claims here, and a substantial part of the acts and omissions complained of occurred in this District.

13. Defendant has purposefully directed its activities towards this District.

14. Defendant has purposefully availed itself of the privilege of doing business in California.

15. Plaintiff's claims arise out of Defendant's forum-related activities.

16. The exercise of jurisdiction over Defendant is reasonable.

17. On information and belief, Defendant localizes *War Robots* for each market where it is distributed, including the United States. This localization includes changes to the language and

currency presented in *War Robots*.

18. On information and belief, Defendant has sold millions of dollars of virtual items to thousands of California residents, most of which are repeat purchases by the same customers, by contracting with the customers to sell virtual items in exchange for legal tender.

19. On information and belief, Defendant knew its customers were located in California when those customers made in-game purchases in *War Robots*.

20. *War Robots* is not a passive website. Rather, it is a highly interactive mobile application that facilitates active and continuous activities between its players and Defendant while having information sufficient to determine that those players are located in California.

21. *War Robots* facilitates ongoing economic activity between thousands of Californians and Defendant.

22. On information and belief, Defendant directly controls whether consumers in California can complete purchases in *War Robots*.

23. On information and belief, Defendant has the capability to determine where its customers are from, including whether purchases are being made from California.

24. On information and belief, Defendant has the capability to prevent California residents from completing purchases in *War Robots*, but has chosen to accept those purchases from California residents.

25. On information and belief, Defendant has taken no steps to restrict California residents' access to *War Robots* or to restrict the ability of California residents to make purchases from *War Robots*.

26. Further, Defendant distributes *War Robots* and processes purchases in *War Robots* through third parties headquartered in California, including Apple and Google.

27. Defendant's developer agreements with Apple and Google make clear that Defendant is responsible for the storefront and in-game items sold in Defendant's games. Those agreements also establish that these platforms act as Defendant's agent for purposes of processing in-app purchases.

28. Defendant intentionally engaged in these numerous business transactions with

California consumers to Defendant's great profit.

29. On information and belief, Defendant engages cloud services providers to provide customers located in California with improved access to *War Robots*.

30. Defendant collects personal information regarding players of *War Robots*, including location data.

31. Defendant shares that information with its partners, including advertisers located in California.

32. Defendant directs advertising for *War Robots* to California residents through these advertising partners.

33. Defendant has the ability to restrict the reach of its advertisements based on location data, but chooses to direct advertisements to consumers in California.

34. Plaintiff's claims arise out of Defendant's forum activities. Specifically, Plaintiff made purchases in *War Robots* from California and was harmed by Defendant's conduct in *War Robots* in California.

35. Defendant knew that the harm suffered through its acts alleged herein would result in harm to California residents.

36. Plaintiff has standing to bring this action pursuant to the California Unfair Competition Law, California Business and Professions Code § 17200, et seq. ("UCL"); the California False Advertising Law, California Business and Professions Code § 17500, et seq. ("FAL"); California Consumer Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA"); and the common law.

37. California has a unique public interest in adjudicating Plaintiff's claims, because Plaintiff is a resident of California and suffered the harms alleged herein in California. Further, *War Robots* is distributed by and collects money through companies headquartered in California, namely Apple and Google.

## IV. FACTUAL ALLEGATIONS

### a. War Robots

38. Defendant's business model relies, in part, on deceiving customers to purchase in-

game items through a complex and deliberately confusing game economy only to then render those purchased items effectively worthless through game updates.

39. *War Robots* is a mobile app game developed and published by Defendant. It is a third-person shooter with real-time player-versus-player battles in multiplayer online arenas. Players operate robots on a live battlefield.

40. *War Robots* is available on iOS, Android, Steam, Amazon and Defendant's MY.GAMES platforms.

41. Players in *War Robots* field customizable robots ("bots") with weapons, passive/active modules, pilots, drones (with chips), and—at higher tiers—Titans, then fight to capture beacons or eliminate the opposing team.

42. *War Robots* uses layered, interlocking currencies and sinks to gate progression and upgrades. Silver (Ag) is the basic soft currency for most upgrades and workshop production and is earned from battles, tasks, Supply Center, Operations, and offers. Gold (Au) is the premium currency used for certain bots/weapons, speeding upgrades, and some premium features. Keys are earned and bought to spin the Black Market. Power Cells are consumed to trigger active modules (e.g., heals/defense bursts) during matches. Platinum is a separate economy for Titans (end-game mechs) and their gear. Historically, components and microchip components were used to craft specific items. In-game items can be purchased or acquired through Black Market chests, Operations Pass (battle pass), Supply Center (daily rolls), events, and limited-time offers.

43. The number and complexity of the currencies in *War Robots* is designed to confuse players and make the value proposition opaque.

44. Defendant, through and in *War Robots*, makes representations to players of *War Robots*, regarding the value, exchange rates and attributes of game's virtual currencies and items. Consumers, including Plaintiff, reasonably interpreted these representations regarding the value and attributes of virtual items and currencies to a have a reasonable duration and that Defendant will not take affirmative steps to devalue those items and currencies soon after purchase.

45. For example, a "module" in *War Robots* attaches to a robot that grants the robot special abilities. *War Robots* includes a variety of "Active Modules" and "Passive Modules."

Defendant advertised these modules in *War Robots* as having specific costs, attributes, upgrade progression, abilities and activation costs.

46. One such attribute that Defendant communicated was that modules were usable across robots. Other attributes that Defendant communicated was customization options.

47. Consumers, including Plaintiff, reasonably relied on these representations in making purchases in *War Robots* during their gameplay. For example, Plaintiff and numerous other consumers spent significant sums of money upgrading their modules and other in-game items relying on the representations from Defendant regarding the abilities and usability of these items. When making their decision to invest significant money in these purchasing and upgrading these in-game items, Plaintiff and other similarly situated consumers reasonably understood and relied on that their investment would not be quickly undermined and deliberately devalued by Defendant, but that the in-game items would retain their advertised attributes for, at a minimum, a reasonable duration.

48. After players spent massive amounts of money relying on Defendant's representations regarding modules in *War Robots*, Defendant announced in or around November 2024 that the existing module system would be replaced with "Specializations," and that the traditional Modules tab would become unavailable during the transition. Upgrading specialization cells in *War Robots* required a new currency. While *War Robots* purported to convert the old module currencies into the new currency, the compensation was only partial and materially erased players' large investments in the prior module system.

49. Further, whereas the prior module system allowed modules to be used across robots, the new specialization system was specific to a particular robots, thereby undermining Defendant's prior representations regarding the usability and attributes of modules, which players relied upon in making their substantial investments in those modules and other in-game purchases.

50. Still further, the specialization system removed customization and combination options previously available, thereby eliminating significant value that players relied upon in making their purchase decisions with respect to these modules.

51. The bait and switch of the module system was not an isolated incident. Defendant has introduced many other changes in *War Robots* specifically designed to devalue consumers' prior

investments.

52. Players have repeatedly complained that major reworks and "power-creep" updates made earlier items functionally worthless, even when they were bought or upgraded at significant cost.

53. For example, Defendant removed the drone and microchip system, replacing it with a new framework. Recognizing that it was taking something of value from its players, Defendant promised users with automatic conversion and compensation for this change. However, those payouts did not adequately and fairly compensate players for their sunk costs or lost functionality and only trapped players into a new endless cycle of spending. Defendant made these changes through a mandatory game update to the *War Robots* software.

54. Similarly, after consumers spent significant amounts of money upgrading their bots and weapons, Defendant deliberately weakened the functionality of those bots and weapons while simultaneously introducing and increasing the functionality of other bots and weapons and/or introducing new overpowered bots and weapons. In doing so, Defendant rendered players' prior investments in bot and weapon upgrades worthless so as to induce those players to spend ever more money on other in-game items. Defendant made these changes through a mandatory game update to the *War Robots* software.

55. On information and belief, when introducing new bots, weapons and other in-game items in *War Robots* Defendant markets these items to consumers in the game as having specific attributes and upgrade path, while knowing that Defendant is planning near-term changes that will severely devalue or degrade the items after players invest significant sums to purchase and upgrade these items.

56. Similarly, Defendant made representations in *War Robots* regarding the cost of upgrading items to maximum levels only to later materially alter that upgrade progression through the introduction of new currencies and the creation of new resource bottlenecks needed to upgrade. Users, including Plaintiff, relied on these representations in making monetary investments in upgrading items in *War Robots*, only to have those investments undermined by Defendant's deliberate

schemes to induce additional spending by its customers.

57. For example, in patch 10.4, Defendant deliberately and materially weakened weapons called "Leiming," "Fengbao," "Shifang," "Hurricane," and "Ultimate Shocktrain" and robots named "Eiffel," "Luchador," and "Rook." Defendant devalued various advertised attributes of these items, including damage, burst interval, reload time and charge time by as much as 50%.

58. As another example, in or around June 2025, Defendant weakened the "Sword drone" and multiple weapon families with up to 40-60% reductions in effectiveness. For example, the Fengbao, Leiming, and Shifang weapons had their previously advertised damage attributes reduced by approximately 45-55%. The "Screamer," "Growler," and "Howler" family of weapons were diminished by approximately 30% from their advertised attributes with their shot interval doubling in time. Similarly, the "Regulator" weapon had its damage attribute reduced by approximately 40% and the "Bersagliere" weapon by 50% from their advertised values that players relied upon.

59. Defendant also introduced a blanket reduction of 10% for all Tier 4 weapons, simultaneously devaluing players' entire inventories of items from the attribute levels advertised by Defendant that induced players into spending money to maximize their upgrades for these items.

60. Numerous consumers have complained of Defendant's tactics, describing those business practices as "robbing" players.[1]

61. These constitute only some of the misrepresentations made by Defendant. Plaintiff does not have reasonable access to *all* of the past representations made by Defendant in War Robots regarding in-game items and Defendant's devaluation thereof. Defendant is in possession of and has superior access to the representations made in *War Robots* regarding the cost, upgrades, attributes and other aspects of the in-game items offered for sale in *War Robots*.

62. Defendant is also in possession of and has superior access to how the value of in-game items was deliberately diminished by Defendant.

63. Defendant also implements "dark pattern" practices to foster its use of intermediate

---

[1] *See, e.g.* https://www.youtube.com/watch?v=DEMHYe64INM

currency, a practice of "hiding the real cost by requiring consumers to buy things with virtual currency."[2] Forcing user to pay with in-game virtual currency acts to disguises the true real-world financial cost of user play.

64. The necessary use of this intermediate currency is propagated by numerous other dark patterns that Defendant designed the game to implement, with the intent to drive users to increased "microtransactions" and in-app purchases, all the while disconnecting the player from the real monetary value they have invested.

65. As another example, "grinding" is a form of coerced action dark pattern, in which the free version of a game is so cumbersome and labor-intensive that the player is induced to unlock features with in-app purchases in order to advance. War Robots is designed so that as a player progresses deeper into the game and thereby becomes more invested, competition and advancement become more difficult and require more time to complete, and nearly impossible without the purchase of additional upgrades. This leads to the necessity to expend real currency to continue to receive the gratification they previously experienced in the early stages of the game, as these resources are otherwise only available in insufficient amounts through in-game labor alone and in the absence of those resources players cannot successfully compete in the game.

66. In essence, the game is made up of feedback loops, where the output becomes the input for the next iteration of the system. This means that every action made in the game gives the user access to future actions, creating a sense of player progress and motivation. [3]

67. Additionally, *War Robots* includes a mechanic whereby players, through an element of chance may obtain free in-game items. Defendant manipulates the odds of those mechanics to ensure that the most desirable items are less likely to be awarded so as to induce players into spending

---

[2] FTC Staff Report, *Bringing Dark Patters to Light* (September, 2022) (available at: https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf)

[3] Chris Lewis, Irresistible Apps: Motivational Design Patterns for Apps, Games, and Web-based Communities (1st ed. 2014)

money to obtain those items.

68. Defendant builds off the compulsive feedback loops that its game intentionally creates to induce Plaintiff and other players to spend hundreds, or thousands, of dollars on in-game items. By implementing a "grinding" dark pattern to hinder advancement of gameplay after users are addicted to the feedback loop, Defendant lures players into spending real money on their arbitrarily priced in-game items.

69. On information and belief, *War Robots* has reached over $1 billion in global revenues and has a monthly active player base of 4 million players, with over 40% of those revenues and players being located in the United States.

**b. Plaintiff's Experience with War Robots.**

70. Plaintiff began playing War Robots in or around 2017.

71. Between 2017 and June 2025, Plaintiff purchased various in-game items in *War Robots*, and made these purchases from his residence in California. Plaintiff made these purchases for the purpose of upgrading his bots and weapons in *War Robots*.

72. Plaintiff spent at least hundreds of dollars in *War Robots*.

73. Plaintiff purchased these items with the reasonable belief that his in-game items would have value in *War Robots* for a reasonable period of time and that the upgrades for his bots and weapons that he obtained through his in-game purchases would allow him to remain competitive in the *War Robots* for a reasonable period of time. In so doing, Plaintiff relied on representations from Defendant as described above, which he saw from California.

74. As a result of Defendant's changes to *War Robots*, the upgrades Plaintiff made to his bots and weapons through the in-game items he purchased with real world currency became effectively worthless within a short period of time.

75. Plaintiff enjoys playing online and robotic games such as War Robots and has an ongoing interest in playing *War Robots* if it were to change to be devoid of unlawful, deceptive and unfair business practices. Plaintiff therefore has an ongoing interest in *War Robots* complying with consumer protection laws.

76. Plaintiff seeks damages or, in the alternative, restitution. Plaintiff is permitted to seek

equitable remedies in the alternative because he has no adequate remedy at law. A legal remedy is not adequate if it is not certain as an available or equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showing as Plaintiff's legal claims. Further, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.

77. Defendant's conduct is ongoing on poses a continued threat of harm to the public.

## V. CLASS ACTION ALLEGATIONS

78. Plaintiff brings this action on behalf of himself and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following classes:

> Nationwide Class: All persons who, while in the United States, from the start of the applicable statute of limitations period through the present ("the Class Period") purchased one or more items in War Robots.
>
> California Subclass: All persons who, while in the State of California, purchased one or more items in War Robots during the Class Period.

79. Collectively, the Nationwide Class and California Subclass shall be referred to as the "Classes." Excluded from the Classes are any and all past or present officers, directors, or employees of Defendant, any judges who preside over this action, and any partner or employee of Class Counsel. Also excluded from the Classes are any members who are bound by mandatory arbitration and class waiver agreements.

80. Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

81. **Numerosity.** The Classes are so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Classes is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Classes.

82. **Typicality.** Plaintiff's claims are typical of those of other members of the Classes, all

of whom have suffered similar harm due to Defendant's course of conduct as described herein.

83. **Adequacy of Representation.** Plaintiff is an adequate representative of the Classes and will fairly and adequately protect the interests of the Classes. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously.

84. **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Classes that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary among members of the Classes, and which may be determined without reference to the individual circumstances of any member of the Classes, include, but are not limited to, the following:

(a) Whether consumers had a reasonable expectation when purchasing items in *War Robots* that Defendant would not deliberately devalue those purchases in bad faith.

(b) Whether, during the Class Period, Defendant modified *War Robots* to devalue items purchased by players.

(c) Whether, during the Class Period, Defendant modified *War Robots* in a way to render items upgraded by players non-competitive.

(d) Whether, during the Class Period, Defendant modified *War Robots* deliberate to induce players into spending additional money to remain competitive.

(e) Whether Defendant's devaluing of items in *War Robots* was done deceptively and deliberately.

(f) Whether Defendant acted in bad faith and for the purpose of unjustly enriching itself when it devalued items in *War Robots*.

(g) Does Defendant's devaluation of purchased items in *War Robots* constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.?

(h) Does Defendant's devaluation of purchased items in *War Robots* constitute false advertising in violation of the California False Advertising Law under Business & Professions Code section 17500, *et seq*.?

(i) Does Defendant's devaluation of purchased items in *War Robots* constitute a violation of the California Legal Remedies Act California Civil Code §§1750, *et seq*.?

(j) Did Defendant's devaluation of purchased items in *War Robots* breach Defendant's duty of good faith and fair dealing?

(k) What did Defendant hope to gain from its scheme to devalue purchased items in *War Robots*?

(l) What did Defendant gain from its scheme to devalue purchased items in *War Robots*?

(m) Whether Defendant had a duty to disclose to its customers that purchased items in *War Robots* would be devalued quickly.

(n) To what extent did Defendant's conduct cause, and continue to cause, harm to the Class?

(o) Whether the members of the Class are entitled to damages and/or restitution.

(p) What type of injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in the alleged conduct?

(q) Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

85. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Classes could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Classes. Plaintiff anticipates no

difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Classes may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Classes who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

86. **Ascertainability.** Upon information and belief, Defendant keeps extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, and general marketing programs. On information and belief, Defendant has one or more databases through which a significant majority of members of the Classes may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §1750, *et seq*.

**(By Plaintiff Against Defendant on Behalf of the California Subclass)**

87. Plaintiff restates and realleges paragraphs 1-86 as if fully set forth herein.

88. Plaintiff brings this claim on behalf of the California Subclass.

89. Plaintiff and the other class members are consumers within the meaning of Cal. Civ. Code §1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§1761(e) and 1770.

90. Defendant is a "person" within the meaning of Cal. Civ. Code §§1761(c) and 1770, and it sell "goods or services" within the meaning of Cal. Civ. Code §§1761(b) and 1770.

91. *War Robots* and the in-app purchases are a "good" or "service" within the meaning of Cal. Civ. Code §§ 1761(a) and (b).

92. Defendant conduct violates practices proscribed by Cal. Civ. Code. §1770(a), including: "(5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have" and "(7) [r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

93. Specifically, Defendant sells virtual items in *War Robots* with the representation that those items will have particular characteristics, benefits, standard and quality knowing that in a short period of time Defendant will render those virtual items effectively worthless.

94. Defendant's practices brought injury to Plaintiff and the California Subclass in that they made purchases they would otherwise not have made, and/or made purchases for more than they would have paid.

95. Plaintiff and the other class members suffered actual damages as a direct and proximate result of the Defendants' actions, concealment, and/or omissions in the advertising, marketing, and promotion of its in-app purchases, in violation of the CLRA, as evidenced by the substantial sums Defendant pocketed.

96. Defendant's conduct is ongoing and continuing to harm class members.

97. Plaintiff and class members lack an adequate remedy at law and is entitled to equitable relief.

98. Plaintiff, on behalf of himself and the class members, demands judgment against Defendant for injunctive relief.

99. On or about September 17, 2025, Plaintiff provided Defendant with notice of its CLRA violations pursuant to Cal. Civ. Code § 1782. Defendant did not respond to the notice or otherwise rectify its violation.

100. Plaintiff, on behalf of himself and the class members, demands judgment against Defendant for damages.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §17500, *et seq.***

**(By Plaintiff Against Defendant on Behalf of the California Subclass)**

101. Plaintiff restates and realleges paragraphs 1-86 as if fully set forth herein.

102. Plaintiff brings this claim on behalf of the California Subclass.

103. The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

104. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

105. Defendant intentionally disposed of in-game items in *War Robots* in a misleading way. Specifically, Defendant sold Plaintiff and class members in-game items in *War Robots* knowing that Defendant would render those items effectively worthless in the near future. Defendant further intentionally disposed of in-game items in *War Robots* as part of a plan or scheme to devalue those items after purchase.

106. Defendant thus misled customers, including Plaintiff, into purchasing in-game items in *War Robots*.

107. Defendant engaged in this deceptive conduct with the intent to dispose of personal property—namely, with the intent to increase the sale of in-game items.

108. Defendant knew, or by the exercise of reasonable care should have known, that its marketing was untrue and/or misleading.

109. Among other things, Defendant promoted the in-game items as having specified attributes even though it knew, or in the exercise of reasonable care should have known, that Defendant would soon render those items effectively worthless.

110. As a direct and proximate result of Defendant's misleading advertisements, Plaintiff and members of the California Subclass have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and all class members, and to enjoin Defendant from continuing its false and misleading advertising practices in violation of California law in the future. Otherwise, Plaintiff, class members, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §17200, *et seq*.)**

**(By Plaintiff Against Defendant on Behalf of the California Subclass)**

111. Plaintiff restates and realleges paragraphs 1-86 as if fully set forth herein.

112. Plaintiff brings this claim on behalf of the California Subclass.

113. California Business and Professions Code section 17200 *et seq*., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

114. A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

115. Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant has engaged in unlawful business acts and practices in violation of the UCL, including violations of California Business & Professions Code sections 17500 and California Civil Code sections 1770(a).

116. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

117. Here, Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in a misleading and deceptive scheme by promoting and selling in-game items in *War Robots* that Defendant intends to devalue and render effectively worthless in the near future.

118. When purchasing in-game items in *War Robots*, consumers had a reasonable expectation and Defendant's deceptive marketing practice gave consumers the false impression that the items purchased would have a reasonable degree of enduring value. Defendant, however, knew that it would render those items effectively worthless in the near future and Defendant's acts and practices thus offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

119. The harm to Plaintiff and members of the class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

120. A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

121. Here, members of the public are likely to be deceived by Defendant's conduct as alleged above. Consumers have a reasonable expectation that when they purchase an item the seller of that item will not take affirmative steps to render that item less valuable and effectively useless.

122. Defendant, through its actions as alleged herein, violated that reasonable expectation thereby deceiving consumers into making repeated purchases in *War Robots*.

123. In addition, Defendant had a duty to disclose the truth about its plans to devalue in-game items. Defendant, however, concealed this material information from customers and the general public.

124. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

125. Plaintiff and each member of the class suffered an injury in fact and lost money or property as a result of Defendant's unlawful, unfair, and/or fraudulent business practices, and as a result of Defendant's unfair, deceptive, untrue or misleading advertising.

126. Plaintiff, on behalf of himself and the members of the class, seek restitution and disgorgement of all moneys received by Defendant through the conduct described above.

127. Plaintiff, on behalf of himself and the members of the class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein.

**<u>FOURTH CLAIM FOR RELIEF</u>**

**FRAUDULENT CONCEALMENT**

**(By Plaintiff Against Defendant on Behalf of the Nationwide Class)**

128. Plaintiff restates and realleges paragraphs 1-86 as if fully set forth herein.

129. Plaintiff brings this claim on behalf of the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of the California Subclass.

130. Defendant uniformly disclosed incomplete facts to Plaintiff and all members of the Class during the Class Period in connection with in-game purchases in *War Robots*.

131. Namely, Defendant did not disclose that it intended to devalue the effectiveness and operability of in-game items soon after users purchased those items.

132. Defendant, however, intentionally failed to disclose other facts, making Defendant's disclosure deceptive.

133. As a result, Defendant deceived Plaintiff and the Class into believing that they were purchasing items in *War Robots* that would have a value substantially higher than what Defendant intended to provide.

134. Plaintiff and the Class did not know of the concealed facts.

135. Defendant intended to deceive Plaintiff and the Class by concealing the facts described above.

136. Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did.

137. The omitted information was material and thus, reliance is presumed on a classwide basis. The omitted information related to the value and usable duration of the items sold. A reasonable person would plainly attach importance to matters affecting value and duration of functionality of the item in determining his or her purchasing decision.

138. As a direct and proximate result of the above, Plaintiff and the Class have been harmed and suffered damages in an amount to be proven at trial.

139. Defendant undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiff and the Class, and also because Defendant's deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the Class. Based on the allegations above, Defendant's actions constituted oppression because Defendant's deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

## FIFTH CLAIM FOR RELIEF

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(By Plaintiff Against Defendant on Behalf of the Nationwide Class)**

140. Plaintiff restates and realleges paragraphs 1-86 as if fully set forth herein.

141. Plaintiff brings this claim on behalf of the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of the California Subclass.

142. The implied covenant of good faith and fair dealing requires parties to embrace a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of a contract.

143. Plaintiff and class members entered into contracts with Defendant when they purchased in-game items from *War Robots*. Specifically, Defendant offered to sell Plaintiff and

class members virtual currencies and items having specified values and attributes for a specified price. Plaintiff and class members accepted those offers when making purchases in *War Robots*.

144. Under the implied covenant of good faith and fair dealing, Defendant was obligated to proceed in good faith and not render the items purchased by Plaintiff and class members materially less valuable and/or effectively worthless.

145. Defendant violated this obligation by pushing updates to *War Robots* that were deliberately designed to materially reduce or eliminate the value of items purchased by Plaintiff and class members.

146. Defendant's actions to devalue items purchased by Plaintiff and class members constitute arbitrary and unreasonable conduct that has had the effect of preventing Plaintiff and class members from receiving the fruits of their contractual bargain.

147. Accordingly, Defendant's conduct constitutes a breach of the implied covenant of good faith and fair dealing.

148. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and members of the Class have been damaged by not having received the fair value of the items they purchased in *War Robots*.

**<u>SIXTH CLAIM FOR RELIEF</u>**

**QUASI-CONTRACT/UNJUST ENRICHMENT**

**(By Plaintiff Against Defendant on Behalf of the Nationwide Class)**

149. Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

150. Plaintiff brings this claim on behalf of the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of the California Subclass.

151. As alleged in detail above, Defendant's unfair business practices and misleading marketing caused Plaintiff and class members to purchase items from *War Robots*, which items were soon thereafter rendered effectively worthless by Defendant.

152. In this way, Defendant received a direct and unjust benefit at Plaintiff's and class members' expense.

153. Plaintiff and the class seek restitution, and in the alternative, rescission.

## VII. PRAYER FOR RELIEF

154. WHEREFORE, Plaintiff prays for judgment against Defendant as follow:

**<u>ON THE FIRST CLAIM FOR RELIEF FOR VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§1750 *et seq.*)</u>**

A. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B. For an awarded of damages at an amount to be determined at trial.

C. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading practices.

D. For an award of equitable and declaratory relief.

E. For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

F. For such other and further relief as the Court may deem just and proper.

**<u>ON THE SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF THE FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§17500 *et seq.*</u>**

G. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

H. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising and pricing practices.

I. For an award of restitution and disgorgement of moneys paid that Defendant obtained as a result of its unlawful, unfair, and fraudulent business practices, and as a result of its unfair, deceptive, untrue, and misleading advertising, all as described above.

J. For an award of equitable and declaratory relief.

K. For pre and post judgment interest and costs of suit incurred herein.

L. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

M. For such other and further relief as the Court may deem just and proper.

**ON THE THIRD CLAIM FOR RELIEF FOR VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§17200 *et seq.*)**

N. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

O. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising and pricing practices.

P. For an award of restitution and disgorgement of moneys paid that Defendant obtained as a result of its unlawful, unfair, and fraudulent business practices, and as a result of its unfair, deceptive, untrue, and misleading advertising, all as described above.

Q. For an award of equitable and declaratory relief.

R. For pre and post judgment interest and costs of suit incurred herein.

S. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

T. For such other and further relief as the Court may deem just and proper.

**ON THE FOURTH CLAIM FOR RELIEF FOR FRAUDULENT CONCEALMENT**

U. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

V. For compensatory damages in an amount to be proven at trial.

W. For punitive damages in an amount sufficient to punish Defendant and to deter it from engaging in wrongful conduct in the future.

X. For pre and post judgment interest and costs of suit incurred herein.

Y. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

Z. For such other and further relief as the Court may deem just and proper.

**ON THE FIFTH CLAIM FOR RELIEF FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

AA. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

BB. For compensatory damages in an amount to be proven at trial.

CC. For punitive damages in an amount sufficient to punish Defendant and to deter it from engaging in wrongful conduct in the future.

DD. For pre and post judgment interest and costs of suit incurred herein.

EE. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

FF. For such other and further relief as the Court may deem just and proper.

**ON THE SIXTH CLAIM FOR RELIEF FOR QUASI-CONTRACT/UNJUST ENRICHMENT**

GG. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

HH. For an award of restitution and disgorgement.

II. For an award of equitable and declaratory relief.

JJ. For pre and post judgment interest and costs of suit incurred herein.

KK. For attorneys’ fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

LL. For such other and further relief as the Court may deem just and proper.

Dated: March 6, 2026

EDELSBERG LAW, P.A.

By: */s/ Scott Edelsberg*
Scott Edelsberg

Attorneys for Plaintiff, James Johann

**JURY DEMAND**

Plaintiff, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all triable issues.

Dated: March 6, 2026

EDELSBERG LAW, P.A.

By: */s/ Scott Edelsberg*
Scott Edelsberg

Attorneys for Plaintiff, James Johann